# Johnson v. Smith.

## Bill to Redeem from Mortgage.

(Decided November 7, 1914. Rehearing denied December 17, 1914. 67 South. 401.)

1. *Mortgages; Redemption; Bill.*—The statement in a bill that the holder of a mortgage refused to furnish a statement of the amount due on the mortgage alleges a sufficient excuse for not tendering the amount due and necessary to be paid on redemption before filing the bill.

2. *Same; Equitable Bill.*—Where the bill is an equitable bill to redeem, as distinguished from a statutory bill, compliance with the conditions or terms of the statute as to tender, demand, etc., need not be shown, since the requisites of bills to exercise the statutory right of redemption are materially different from those of bills to exercise the equitable right; the statutory right not existing until the equitable right was cut off.

[Johnson v. Smith.]

3. *Same; Foreclosure; Cross Bill.*—Where the mortgagor has filed a bill to redeem, the mortgagee or his assignee cannot foreclose under the power and cut off the privilege to exercise the equitable right of redemption; hence, a cross bill for such a foreclosure subsequent to the filing of a bill to redeem is properly dismissed, although a cross bill for foreclosure may be filed, conditioned upon the failure of complainant in his bill to redeem.

4. *Same; Evidence; Probate Proceedings.*—Where the widow seeks to recover land formerly belonging to her deceased husband from an assignee of his mortgagee, the probate proceedings, setting apart the lands to her as exempt, are admissible.

APPEAL from Elmore Chancery Court.

Heard before Hon. W. W. WHITESIDE.

Bill by Tempie Smith against Dave Johnson to redeem land from mortgage, with cross-bill for foreclosure. From a decree granting the relief prayed in the original bill, and denying relief under the cross-bill, respondent appeals. Affirmed.

The bill alleges that Tempie Smith was married in 1901 to Berry Smith, who was in possession of and owned 160 acres of land described in the bill, and that he continued to own the land until his death in 1909, and that he died seised and possessed of said lands and none other, and left surviving him oratrix as his widow, and no children; that she and her husband resided upon said above described land, and were using the same as a homestead at the time of Berry Smith's death, and that said land did not exceed 160 acres of land in area and $2,000 in value at the time of the death of her said husband. She then sets up the probate proceedings leading up to a decree vesting title to the same in her absolutely and setting the said lands apart as a homestead. It is alleged that in February, 1908, Berry Smith executed a mortgage to W. T. Dozier, conveying said lands to secure an indebtedness of $369.60, payable on October 1, 1908, and that oratrix joined therein; that some time during the fall of 1908 Berry Smith paid to said Dozier the greater amount of the indebtedness se-

cured by the mortgage, and that after that time Dozier transferred the said mortgage to Dave Johnson and assigned to him the indebtedness secured thereby. It is alleged on information and belief that there was less than $200 then due on said mortgage, and that after the death of Berry Smith in November, 1909, Dave Johnson took possession of a mule and wagon belonging to said Smith, and also a large quantity of cotton and other agricultural products sufficient in value to pay off said mortgage, all of which belonged to Berry Smith at the time of his death, and which was covered by said mortgage. Oratrix avers that in February, 1912, she requested Johnson to give her a statement of the amount due on said mortgage and the credits which had been made on said indebtedness, but that he refused to do so, and still refuses, and threatens to foreclose unless oratrix pays him the sum of $418, and has advertised the property for sale. Oratrix submits herself to the jurisdiction of the court, requests an accounting, and expresses a willingness to pay whatever may be found due.

C. H. ROQUEMORE, and E. T. GRAHAM, for appellant.

GEORGE F. SMOOT and J. M. HOLLEY, for appellee.

MAYFIELD, J.—Appellee, as mortgagor, filed this her bill against appellant as assignee of a certain mortgage. The sole purpose of the mortgagor is to redeem the land from the mortgage. The right of redemption sought to be exercised is the equitable right, and not the statutory right.

(1) The bill alleges a sufficient excuse for not tendering the amount due and necessary to be paid, on redemption, before the filing of the bill. It appears that

complainant is an ignorant and uneducated negro woman, that she was ignorant of the exact amount due, that the respondent was claiming as due an amount largely in excess of the real amount, and that a tender of the true amount, if it had been known to complainant, or could have been ascertained by her upon an accounting for that purpose, would have been unavailing. What was said by Stone, C. J., in *Root v. Johnson,* 99 Ala. 92, 10 South. 294, is in exact point in the case at bar: "The law does not exact the observance of a vain ceremony. The purpose of tender, in a case like the present, is to leave the seller without excuse for a non-compliance with his contract, and to cast on him the fault of its breach. When, before tender made, the party to whom money is due declares he will not receive it, or makes any declaration or demand which is equivalent to a refusal to accept the money, if tendered, then actual tender is dispensed with.—7 Wait's Act. & Def. 593. It was sufficient, in this case, to tender payment in the bill. This renders it unnecessary that we should pass on the weight or credibility of the conflicting testimony bearing on the question of the alleged tender made by Johnson of the whole amount due, before instituting this suit."

(2) This was not a bill seeking to exercise the statutory right, and therefore the bill need not show a compliance with the condition or terms of the statute, as to tender, demand, etc. The requisites of bills to exercise the statutory right of redemption are materially different from those of bills to exercise the equitable right. The one right is a mere privilege conferred by the statute on the mortgagor and others mentioned in the statute, and the conditions imposed on the mortgagor or other persons by the statute must be complied with, or a good and valid excuse given for failure therein,

else the bill is demurrable; while the other is a right created by courts of equity to protect the mortgagor from the loss of his property, but secures to the mortgagee the full payment of his mortgage debt. The one is the creature of the statute; the other, of courts of equity. The one does not exist until the other is cut off. The foreclosure which cuts off and terminates the latter right gives rise to, and is the inception of, the former right. Both rights cannot, therefore, exist as to the same property and between the same parties at the same time and under the same conditions.

The respondent demurred to the original and amended bills, assigning 49 grounds of demurrer thereto. It is wholly unnecessary to notice each ground of demurrer separately; in fact, many of the grounds are not insisted upon in the argument. Many of the grounds of demurrer are inapt to a bill like this, which merely seeks to exercise the equitable right of redemption, but would be apt to a bill seeking to exercise the statutory right. It is sufficient to say that the chancellor did not err as to any of his rulings on the demurrers to the original and amended bills.

(3) The respondent answered the bill, and sought to make his answer a cross-bill, and by such cross-bill attempted to set up a foreclosure of the mortgage after the filing of the bill, with the cutting off of complainant's right to redeem. The chancellor ruled correctly in sustaining a demurrer to this cross-bill, in so far as it sought to set up a foreclosure after the filing of the bill. A mortgagee or assignee cannot, after bill filed by the mortgagor to redeem, proceed to foreclose under the powers, and thus cut off the privilege to exercise the equitable right of redemption. The mortgagee or assignee, by a cross-bill, or under the power, may have

the mortgage foreclosed, if the mortgagor fails to pay, or to sustain his bill filed to redeem; that is, he may have a decree directing foreclosure in the event the complainant fails to sustain his bill to redeem, or fails to comply with the decree as to the terms of redemption; but he cannot defeat the bill to redeem by a foreclosure under the powers of the mortgage after bill filed to redeem, and pending the suit for such purpose. If the bill to redeem is successful, it is tantamount to a foreclosure. It therefore follows that there was no error in sustaining the demurrer to the cross-bill, which attempted to set up a foreclosure after bill filed and pending the suit. The same relief could be had under the original bill as was sought in the cross-bill.

There was a great deal of testimony taken by both parties, and many objections and exceptions were taken and reserved by both, to certain parts thereof. It would be useless to attempt to treat each in this opinion. It is sufficient to say that they have been carefully examined and considered, and that we find no reversible error as to any of such rulings. This case is distinguishable from the case of *Presnall v. Burgess,* 181 Ala. 263, 61 South. 804.

We fully agree with the register and the chancellor as to the findings of fact, as to the amount due on the mortgage debt and necessary to be paid in order to redeem. In other words, the averments of the bill were proven, and the complainant was entitled to the relief prayed, and awarded by the decree. We find no error in this record of which the respondent can complain.

(4) There was no error in allowing proof of the proceedings in the probate court, setting apart the lands in question as exempt to the widow.

[Johnson v. Johnson.]

Finding no error in the record, the decree of the chancellor is in all things affirmed.

Affirmed.

ANDERSON, C. J., and MCCLELLAN and SOMERVILLE, JJ., concur.